IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

SONRISA HOLDING, LLC;
LIVING TRUST AGREEMENT OF MELODY L. ORTEGA DATED JANUARY 21, 2002

    Plaintiffs,

v.

CIRCLE K STORES, INC.

    Defendant.

_____

## COMPLAINT AND JURY DEMAND
_____

    Plaintiffs Sonrisa Holding, LLC ("Sonrisa") and Living Trust Agreement of Melody L. Ortega Dated January 21, 2002 ("Ortega"), by and through their attorney David Steinberger of Feldmann Nagel, LLC, state, aver and allege as follows:

### INTRODUCTION

1.     Plaintiffs own and owned certain properties, as described below, in Denver, Colorado which were contaminated with petroleum products, including gasoline, which was spilled, discharged and/or released by Defendant Circle K Stores, Inc. ("Circle K") from its gasoline station adjacent to Plaintiffs' properties.

2.     The petroleum products released from Circle K's property migrated onto Plaintiff Sonrisa and Ortega's properties and caused Plaintiffs to suffer a trespass and nuisance and suffer damages as a result of the contamination.

## PARTIES

3. Plaintiff Sonrisa is a Colorado Limited Liability Company located in Denver, Colorado.

4. Plaintiff Ortega is a Colorado Trust located in Wheat Ridge, Colorado.

5. Circle K is a Texas corporation with a principal place of business at 1130 West Warner Road, Building B, Tempe, Arizona 85284.

## JURISDICTION AND VENUE

6. This is a diversity matter under 28 U.S.C. §1332 because Plaintiffs are citizens of Colorado while Circle K is a citizen of Texas. The amount in controversy is more than $75,000.

7. This Court has personal and subject matter jurisdiction over Circle K because Circle K was operating and conducting business in the State of Colorado at the time the incidents giving rise to this Complaint occurred.

8. Venue is proper in this court under 28 U.S.C. §1391(b)(2) because the incident giving rise to this Complaint occurred in Denver, Colorado.

## GENERAL ALLEGATIONS

9. Plaintiff Ortega was, until May 22, 2015, the fee owner of the following properties, which are all located in Denver, Colorado: 3469-3471 West Clyde Place; and 3483-3485 West Clyde Place (the "Ortega Properties").

10. Plaintiff Sonrisa was, until June 11, 2015, the fee owner of the following properties, which are all located in Denver, Colorado: 3460 West 38th Avenue; 3480 W. 38th

Avenue; 3770 Lowell Boulevard; 3461 West Clyde Place; 3451 West Clyde Place; and 3449 West Clyde Place (collectively, the "Sonrisa Properties").

11. The Ortega Properties and the Sonrisa Properties shall be hereinafter identified as the "Impacted Properties."

12. Plaintiff Sonrisa is the current contract purchaser of a certain Retail Condominium Unit associated with a mixed use development project currently being constructed at the location of the Impacted Properties, as described below.  Closing has not yet occurred on the Retail Condominium Unit.

13. Upon information and belief, Circle K is the owner and operator of a retail gasoline service station with an address at 3600 West 38th Avenue, Denver, Colorado (the "Gas Station Property").  The Gas Station Property is identified as Circle K Store No. 9868.

14. Upon information and belief, Circle K buys, sells and stores petroleum products, including gasoline, at, on and from the Gas Station Property.

15. Upon information and belief, in or about June 8, 2011, Circle K reported to the State of Colorado that there has been a gasoline spill at the Gas Station Property.  Circle K initially reported that approximately 100 gallons of gasoline were released.

16. Upon information and belief, based upon further investigation undertaken by Circle K to assess the reported gasoline release at the Gas Station Property, it became known that in addition to the reported 100-gallon gasoline spill, there had also been more extensive

historical releases of gasoline or other petroleum products at, from and under the Gas Station Property.

17. Upon information and belief, petroleum products, including gasoline, were released at or from current or former underground storage tanks ("USTs"), which are used to store such petroleum products, including gasoline, and/or were released from the on-site piping associated with the USTs (the "Associated Piping").

18. Upon information and belief, Circle K was in exclusive procession and control of the petroleum products, including gasoline, stored in the USTs and transported within the Gas Station Property through the Associated Piping.

19. The petroleum products, including gasoline, that were spilled or released at the Gas Station Property migrated off site and entered and caused contamination at and under the Impacted Properties.

20. Circle K had no permission, approval or authority from Plaintiffs to dispose, locate or place its spilled or released petroleum products, including gasoline, onto the Impacted Properties.

21. The petroleum products, including gasoline, which migrated onto the Impacted Properties included, among other contaminants, Benzene and Xylenes, which are a chemical component of gasoline, and Methyl Tertiary Butyl Ether ("MTBE"), which was an additive added to gasoline.

22. The petroleum products, including gasoline, which migrated onto the Impacted Properties created an environmental risk and a potential health hazard at the Impacted Properties. The gasoline-related contaminants Benzene, Xylenes and MTBE were detected in groundwater at the Impacted Property at levels which exceeded the Colorado Risk Based Screening Levels ("RBSL"), including the RBSL for "Groundwater – Indoor Air Exposure Pathway".

23. The exceedences of Colorado RBSLs for the Groundwater – Indoor Air Exposure Pathway meant that there was a possibility that there could be indoor air contamination concerns for any buildings located on the Impacted Properties. Specifically, contaminants in the groundwater could volatilize and enter the indoor air of those buildings, through various pathways, creating a health hazard that current or future building occupants would be exposed to contaminated air.

24. Upon information and belief, as part of Circle K's investigation and remediation of the releases from the Gas Station Property, they should have investigated the risk of indoor air contamination at the Impacted Properties, but they did not do so.

25. In 2014, Plaintiffs entered into contracts to sell the Impacted Properties to Maple Multi-Family Land TX, LP. ("Maple"). Prior to closing, Maple assigned its rights and interests under the purchase agreements for the Impacted Properties to 38th Street Apartments, LLC, a Delaware limited liability company.

26. Plaintiffs and 38th Street Apartments, LLC closed on the sale/purchase of the Impacted Properties on May 22, 2015 (for the Ortega Properties) and June 11, 2015 (for the Sonrisa Properties).

27. 38th Street Apartments, LLC planned to and is in the process of developing a residential and commercial development on the Impacted Properties.

28. Circle K was aware of the proposed sale and planned redevelopment of the Impacted Properties in at least mid-December 2014, when Circle K's environmental consultant met with both the State of Colorado Division of Oil and Public Safety and 38th Street Apartments, LLC's environmental consultant to discuss the environmental contamination at the Impacted Properties and the effect of that contamination on the redevelopment project.

29. A condition and prerequisite to the sale of the Impacted Properties from Plaintiffs to 38th Street Apartments, LLC, was a mechanism whereby proceeds from the purchase price would be placed into an escrow account (the "Environmental Escrow") to fund the cost of addressing the contamination and the potential for vapor intrusion health concerns.

30. Plaintiffs addressed the petroleum contamination at the Impacted Properties, and the potential vapor intrusion health concerns, through the installation of a vapor intrusion barrier/mitigation system as part of the redevelopment of the Impacted Properties by 38th Street Properties, LLC. 38th Street Apartments, LLC constructed the actual vapor intrusion barrier/mitigation system as part of its redevelopment work. That work was funded through the Environmental Escrow.

6

31.     But for the release of petroleum products, including gasoline, by Circle K at and from the Gas Station Property, there would have been no contamination at and under the Impacted Properties and Plaintiffs would not have been required to address the environmental contamination at the Impacted Properties and pay for the installation of a vapor intrusion barrier/mitigation system for the redevelopment of the Impacted Properties by 38th Street Apartments, LLC.

32.     On June 11, 2015, simultaneously with the sale of the Sonrisa Properties to 38th Street Apartments, LLC, Plaintiff Sonrisa entered into a Retail Condominium Sales Contract with 38th Street Apartments, LLC.  Under that Retail Condominium Sales Contract, Sonrisa became, and remains, the contract purchaser of the Retail Unit portion of the redevelopment of the Impacted Properties.  Sonrisa has a current property interest in the Impacted Properties.

33.     To date, Circle K's remediation of the Gas Station Property and off-site properties impacted by the migration of their contamination from the Gas Station Property, including the Impacted Properties, remains on-going.

## FIRST CLAIM FOR RELIEF
### (Trespass)

34.     Plaintiffs incorporate and adopt as part of this claim all the allegations previously set forth in this Complaint.

35.     Circle K caused a physical intrusion onto properties owned by Plaintiffs (the Impacted Properties).  The physical intrusion consisted of the migration of petroleum and/or

petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, from the Gas Station Property onto the Impacted Properties.

36. Circle K did not have any permission from Plaintiffs permitting, allowing or authorizing the entry onto the Impacted Properties of the petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, from the Gas Station Property.

37. Circle K was directly involved with, and intended to, store, use and sell petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, at and from the Gas Station Property.

38. The physical intrusion of petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, from the Gas Station Property onto the Impacted Properties directly caused damage to the Impacted Properties and Plaintiffs.

39. The release of petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, from the Gas Station Property was the result of the acts or omissions of Circle K.

40. The injuries suffered by Plaintiffs were reasonably foreseeable and were proximately caused by Circle K.

WHEREFORE, Plaintiffs Sonrisa and Ortega demand judgment against Circle K for compensatory damages, interests, costs, and any other relief that this court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Nuisance)

41. Plaintiffs incorporate and adopt as part of this claim all the allegations previously set forth in this Complaint.

42. The migration of petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, from the Gas Station Property onto the Impacted Properties was a substantial invasion of the Plaintiffs' interest in their use and enjoyment of the Impacted Properties.

43. The migration of petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, from the Gas Station Property onto the Impacted Properties was the result of Circle K's failure to take reasonable care to properly maintain and store such petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE within the USTs and Associated Piping at the Gas Station Property.

44. The migration of petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, onto the Impacted Properties from the Gas Station Property was proximately caused by Circle K's acts or omissions regarding the storage and use of petroleum and/or petroleum products, including without limitation gasoline, Benzene, Xylenes and/or MTBE, at the Gas Station Property.

WHEREFORE, Plaintiffs Sonrisa and Ortega demand judgment against Circle K for compensatory damages, interests, costs, and any other relief that this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

DATED this 4th day of January, 2017.

                                          Respectfully submitted,

                                          FELDMANN NAGEL, LLC

                                          By: */s David Steinberger*
                                               David Steinberger, Esq. (Atty. Reg. # 48530)
                                               Feldmann Nagel, LLC
                                               3001 Brighton Blvd, Ste. 343
                                               Denver, Colorado 80216
                                               Phone: (303) 813-1200
                                               Fax: (303) 813-1201
                                               E-mail: dsteinberger@feldmann-nagel.com
                                        ATTORNEY FOR PLAINTIFFS

Plaintiff's Address:
Sonrisa Holdings, LLC
2420 W. 26th Avenue, Suite D-300
Denver, CO 80211

Living Trust Agreement of Melody L. Ortega Dated January 21, 2002
c/o Melody Ortega
4140 Ingalls Street
Wheatridge, CO 80033